FILED
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
10:02 am, Nov 03, 2023
**JEFFREY P. COLWELL, CLERK**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT of COLORADO**

|  |  |
|---|---|
| (1)  J. ALAN KONECNY<br>                    Plaintiff,<br><br>      vs.<br><br>(2)    LIBERTY MUTUAL INSURANCE<br>(3)    TIMOTHY SWEENY<br>(4)    MARK J. COLLINS<br>(5)    JENELL GARRISON<br>(6)    CHRISTY MAXEY<br>                    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Case No. 23-CV-
<u>Demand For Jury Trial</u>

## PLAINTIFF'S ORIGINAL COMPLAINT FOR CIVIL PENALTY, DECLARATORY AND INJUNCTIVE RELIEF, OTHER APPROPRIATE RELIEF, AND ORIGINAL PETITION FOR ENFORCEMENT AND FOR SANCTIONS

COMES NOW, J. Alan Konecny, Plaintiff, in the above-styled and numbered Cause, and presents this Complaint against Defendants and for cause of same would state the following:

### SUMMARY of ACTION

7. This is an interstate multiple-violation Federal Civil Action with Demand For Jury Trial on behalf of the Plaintiff. This complaint is filed Pro Se by Plaintiff with outlined lawful expectations of this Court and Opposing Counsel as outlined herein. The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654. Amendment Seven to the United States Constitution was ratified on December 15, 1791, which protects the right for citizens to have a jury trial in federal court regarding civil cases, it also prohibits judges in these trials from overruling facts revealed by the jury.

8. The Crimes and Torts as outlined herein have been perpetrated against Plaintiff by Defendants to include, but not limited to:

   a. **Plaintiff brings by reference** the source litigation, the subject of this suit, **Civil Case No. 23-CV-02753** in the United States District Court For The District of Colorado.

   b. **Violations of 15 U.S.C. § 1011(b) which provides:** Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the **Sherman Act**, and the Act of October 15, 1914, as amended, known as the **Clayton Act**, and the Act of September 26, 1914, known as the **Federal Trade Commission Act**, as amended [15 U.S.C. 41 et seq.], shall be applicable to the business of insurance as:

      1. **Defendants Violated The Sherman Act related to Insurance operations.**

      2. **Defendants Violated The Clayton Act related to Insurance operations.**

      3. **Defendants Violated The Federal Trade Commission Act related to Insurance operations.**

   c. **Bad Faith Claim:**

      1. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

      2. Defendants forced this Plaintiff claimant into litigation [as Plaintiff to Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

      3. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

4. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

5. The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

**d. Violation(s) of 18 U.S. Code § 1349 - Attempt and conspiracy**

1. With Tortious Interference of A Contract & Breach of Contract

2. With Interstate Solicitation To Commit A Crime

3. With Interstate Theft of Labor & Theft of Services

**e. Violation(s) of 42 U.S. Code § 12203 Americans With Disabilities Act of 1990**

1. With Interstate Harassment In The Workplace

2. With Assault, Slander, Libel, Defamation of Character

3. Harassment is a form of insurance discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

**f. Violation(s) of Title VI of The Civil Rights Act of 1964**

1. With Interstate Harassment In The Workplace

2. With Assault, Slander, Libel, Defamation of Character

3. Harassment is a form of insurance discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

**TABLE of CONTENTS**

9. Complaint Table of Contents:

a. Summary Of Action                 Pages 1-3

b. Table Of Contents                 Pages 3-4

c. Jurisdiction And Venue            Pages 4-6

d. The Parties                       Pages 6-8

e.  Opposing Counsel Conduct Expectations          Pages 8-13

f.  Judicial Conduct Expectations                  Page 13-18

g.  Background                                      Pages 18-19

h.  Scienter And Scheme Allegations                Page 19-21

i.  Violations                                      Pages 22-27

j.  Claim(s) For Relief                             Pages 27-43

k.  Petition ("Prayer")                             Page 43

l.  Jury Demand                                     Page 45

m.  Litigation Cc: List                            Page 46

n.  Certificate Of Service                          Page 47

## JURISDICTION AND VENUE

10. The FEDERAL QUESTION has been satisfied to file this complaint in Federal Court. Plaintiff may file this lawsuit in federal court because the case is based on violations of federal law(s). 28 U.S.C. ¬ß 1331.

11. Jurisdiction is proper in this Court under:

   a.  Rule 8(a), F.R.Cy.P. and 28 U.S.C. § 1331, 1345, 1348, 1361, and 1441. This Court has remedial authority pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

   b.  FEDERAL JURISDICTION exists pursuant to federal venue statute, 28 U.S. Code ¬ß 1391 as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, a substantial part of property that is the subject of the action is situated.

12. Venue is proper pursuant to:

   c.  28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred here.

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

13. This Court has remedial authority pursuant to 28 USC Section 139 and 28 U.S. Code § 1369 and Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. § 2000d.

14. The acts giving rise to the violations are Federal Civil Rights violations, Federal Americans With Disabilities Act violations, and These Defendants are liable pursuant to § federal venue statute, 28 U.S. Code § 1391 and 28 USC Section 139 and 28 U.S. Code § 1369 and 42 U.S. Code § 1395 And Title VI of The Civil Rights Act of 1964 Title VI, 42 U.S.C. § 2000d.

15. The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654.

16. The "federal question" has been satisfied. The law involved is the United States Constitution and statutes passed by Congress.

17. Because this lawsuit is based on violations of Federal Law, it does not matter how much or how little Plaintiff claims in damages, although Plaintiff's actual financial losses, before damages, time, and restitution is awarded, exceed $100,000 USD.

18. This is, also, a "federal question" case because there are federal laws that prohibit employment discrimination and harassment based on race, age, sex, religion, or national origin [42 U.S.C. ¬ß 2000(e)].

19. Plaintiff has exhausted all administrative remedies.

20. DIVERSITY of CITIZENSHIP has been proven by Plaintiff.

21. This lawsuit may be filed in the U.S. federal court system because the case is between citizens of different states. 28 U.S.C. ¬ß 1332. A "diversity of citizenship" case.

22. This case is based on a violation of federal law, Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

23. Jurisdiction is proper in this Court under 28 U.S.C. ¬ß 1331. The Court has remedial authority pursuant to 28 U.S.C. ¬ß 1361, 28 U.S.C. ¬ß 2201, and 5 U.S.C. ¬ß 702.

24.  Venue is proper pursuant to 28 U.S.C. ¬ß 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in many Districts / many States / and many Countries.

25. FEDERAL JURISDICTION exists pursuant to ¬ß federal venue statute, 28 U.S. Code ¬ß 1391 and 28 USC Section 139 and 28 U.S. Code ¬ß 1369 and Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. ¬ß 2000d and Federal / Constitutional Law.

26. Moral Turpitude (Moral turpitude means conduct that is wrong in itself even if no statute were to prohibit the conduct)

27. The acts giving rise to the violations are Federal Civil Rights violations, Federal Americans With Disabilities Act violations, Tortious Interference of a Contract, Slander, Libel, Defamation and these Defendants are liable pursuant to federal venue statute, 28 U.S. Code ¬ß 1391 and 28 USC Section 139 and 28 U.S. Code ¬ß 1369 and 42 U.S. Code ¬ß 1395 And Title VI of The Civil Rights Act of 1964 SEC. 601 and Title VI, 42 U.S.C. ¬ß 2000d.

28. Constitutional Amendments – Amendment 7 – "The Right to Jury Trial in Civil Affairs" Amendment Seven to the Constitution was ratified on December 15, 1791. It protects the right for citizens to have a jury trial in federal courts with civil cases.


## THE PARTIES

29. **Plaintiff**, J Alan Konecny is the Founder / Owner of Brand Development Partners, a disabled USCG Veteran and owner of a Colorado USA based specialty-food brand development company.

    4.  125 W Virginia Ave #265 Gunnison CO 81230

    5.  970-452-9378

    6.  alan@branddevelopmentpartners.com

30. **Defendants:**

    a.  LIBERTY MUTUAL INSURANCE

      i.  157 Berkeley Street, Boston, MA 02116

      ii.  Office: 720-873-9642 or 844-325-2467 Fax:(888) 268-8840

b.  TIMOTHY SWEENY - CEO

      i.  157 Berkeley Street, Boston, MA 02116

      ii.  844-325-2467

      iii.  Email N/A

c.  MARK J. COLLINS

      i.  Sr. Claims Resolution Specialist II West America - Global Retail Markets U.S. Casualty Claims Direct Dial: 509-608-4619 Fax: 888-268-8840

      ii.  19 Bert Collins Drive Throop, PA  18512

      iii.  Mark.Collins01@libertymutual.com

      iv.

d.  JENELL GARRISON

      i.  Sr Claims Resolution Specialist II, Cas Global Retail Markets U.S. Casualty Claims Underwriting Company: Ohio Security Insurance Company

      ii.  PO Box 5014 Scranton, PA 18505-5014 Office: 720-873-9642 844-325-2467 Fax: (888) 268-8840

      iii.  19 Bert Collins Drive Throop, PA  18512

      iv.  Jenell.Garrison@libertymutual.com

e.  CHRISTY MAXEY

      i.  Christy Maxey, MBS, AIC Sr. Claims Resolution Specialist, II USRM Casualty Claims – BL Liberty Mutual Insurance Direct: 509-608-4580 Fax: 888-268-8840

      ii.  19 Bert Collins Drive Throop, PA  18512 and PO Box 5014 Scranton, PA 18505-5014

      iii.  christina.maxey@libertymutual.com

## OPPOSING COUNSEL CONDUCT EXPECTATIONS

31. The Plaintiff is asking all Counsel, opposing Counsel, Lawyers, legal aids, legal employees, and like professionals to follow the below "Best Practices and Rules of Civil Procedure" as outlined below and Plaintiff has expectations of opposing counsel to specifically follow the below Code of Conduct for and "Rules of Civil Procedure" as specifically outlined herein below:

   d.  QUOTE: "According to the *Colorado Faculty of Federal Advocates* and their "Best Practices in Pro Se Party Litigation" dated February 13, 2020, in conjunction with the ***Colorado Bar Association in coordination with the U.S. District Court for the District of Colorado"***:

"Pro se litigation can be challenging for everyone involved. Pro se litigants are to be held to the same standards as lawyers but may struggle with the complexities of federal court litigation. Judges and opposing attorneys may struggle to find an appropriate balance between holding pro se parties accountable to applicable rules and procedure and affording them a measure of leeway since they are unrepresented. This panel will offer perspectives from all sides and insight into best practices for giving these cases their best opportunity to move forward as smoothly as possible."

"The notion of zealous advocacy by lawyers / legal professionals are premised on the idea that both sides are well represented. See, e.g., Colo. RPC Preamble, para. 8 ("A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done."). Not only are pro se parties unrepresented, almost all lack meaningful access to representation."

"In addition to fulfilling all one's ethical duties (e.g., candor toward the tribunal and truthfulness), reasonableness is a good guiding principle when deciding what positions to take before the court. (10th Cir. 1991). But it is improper for the court to assume the role of advocate for the pro se litigant."

"Despite the liberal construction afforded pro se pleadings, courts will not construct arguments or theories for a pro se party by supplying additional facts or constructing legal theories that assume facts never pleaded. Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990)."

"Pro se litigants should be afforded deference in the form of "occasional allowances by the court for honest mistakes [which] provide leeway for plaintiffs who are not trained in the law and do not have representation. This deference, though, should be balanced with potential abuse ... and constant delays in the judicial system." Brewer v. DKD Elec. Co., "Civ. No. 02-0407 LH/RLP, 2004 WL 6218811, at *2–3 (D.N.M. June 14, 2004); see also Wallin v. Sygma Network, No. 18-cv-01097-DDD-SKC, 2019 WL 6702066 (D. Colo. Nov.

18, 2019), report and recommendation adopted, No. 18-cv-01097-DDD-SKC, 2019 WL 6700434 (D. Colo. Dec. 9, 2019)."

"Most pro se litigants are intimidated by lawyers. Be kind. Be patient. As officers of the court and of the legal system, lawyers have an affirmative obligation to treat pro se litigants (and all litigants) with respect and professionalism. See, e.g., Colorado Rules of Professional Conduct."
"You're (The lawyer's) role as counsel of record and as an officer of the court is to manage litigation in a manner "to secure the just, speedy, and inexpensive" determination of litigation. Fed. R. Civ. P.1."
"Traditional" litigation and discovery tactics may be unnecessary and less effective with a pro se litigant and may only serve to exacerbate issues in the case."

"Avoid overuse of legalese. Using words a layperson can understand may aid the pro se litigant's understanding of your arguments and the pertinent issues, and could lead to a more focused and coherent response from the pro se litigant. This benefits everyone.""

"File a response to a pro se litigant's paper even if you're not sure how to respond. Your response might simply be to tell the court that you're uncertain of how to construe the filing, or that you don't believe the filing requires a response, but nevertheless you oppose the relief sought. No response may confuse the pro se litigant into believing she prevailed because no response was filed. Also, without a response the motion may fall through the cracks if the court is waiting on a response before taking up the matter."

"Request a status conference with the court whenever things seem to be going south. These conferences afford the court an opportunity to explain things to the pro se litigant and reset and reiterate expectations, obligations, and requirements.

"A pro se litigant's pleadings should be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. Hall v. Bellmon, 935 F.2d 1106".
"Don't shy away from trying to settle these cases with the assistance of a third- party. Pro se litigants may start with highly unrealistic expectations of what a victory or settlement should look like. A third-party can reset those expectations with a dose of reality that aids in settling the case."

"Don't construe the several chances a court might afford a pro se litigant as the court favoring that party or advocating for them. With the significant challenges pro se litigants face, some judges may make decisions to ensure that these litigants get a fair opportunity to present their case so that justice might be done. But all judges have their limits in affording such leeway. See, supra"

"Colorado Rules of Professional Conduct Implicated In Pro Se Litigation Rules of Prof.Cond., Rule 4.1" Rule 4.1. Truthfulness In Statements To Others
In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6"

"RULE 4.3. DEALING WITH UNREPRESENTED PERSON Effective: December 1, 2019
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."

"RULE 4.4. RESPECT FOR RIGHTS of THIRD PERSONS Effective: December 1, 2019
(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."
"Rules of Prof. Cond., Preamble PREAMBLE: A LAWYER'S RESPONSIBILITIES
A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. With limited exceptions, the Colorado Rules of Professional Conduct have been adopted as standards of professional responsibility for the U.S. District Court and the U.S. Bankruptcy Court for the District of Colorado. See D.C.COLO.LAttyR 2."

"As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education."

"In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest."

"A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done.2 . . .  Zealousness does not, under any circumstances, justify conduct that is unprofessional, discourteous, or uncivil toward any person involved in the legal system."  "This is a curious statement because it suggests that caution is warranted to ensure justice is being done when an opposing party is not represented by counsel." (10th Cir. 1991). "But it is improper for the court to assume the role of advocate for the pro se litigant."Despite the liberal construction afforded pro se pleadings, courts will not construct arguments or theories for a pro se party by supplying additional facts or constructing legal theories that assume facts never pleaded. Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990)."

"Pro se litigants should be afforded deference in the form of occasional allowances by the court for honest mistakes [which] provide leeway for plaintiffs who are not trained in the law and do not have representation. This deference, though, should be balanced with potential abuse ... and constant delays in the judicial system." Brewer v. DKD Elec. Co., Civ. No. 02-0407 LH/RLP, 2004 WL 6218811, at *2–3 (D.N.M. June 14, 2004); see also Wallin v. Sygma Network, No. 18-cv-01097-DDD-SKC, 2019 WL 6702066 (D. Colo. Nov. 18, 2019), report and recommendation adopted, No. 18-cv-01097-DDD-SKC, 2019 WL 6700434 (D. Colo. Dec. 9, 2019)." Be patient. As officers of the court and of the legal system, lawyers have an affirmative obligation to treat pro se litigants (and all litigants) with respect and professionalism. Colorado Rules of Professional Conduct."

"(The Lawyers) Your role as counsel of record and as an officer of the court is to manage litigation in a manner "to secure the just, speedy, and inexpensive" determination of litigation. Fed. R. Civ. P. 1.

"Traditional" litigation and discovery tactics may be unnecessary and less effective with a pro se litigant and may only serve to exacerbate issues in the case."

"Avoid overuse of legalese. Using words a layperson can understand may aid the pro se litigant's understanding of your arguments and the pertinent issues, and could lead to a more focused and coherent response from the pro se litigant. This benefits everyone."

"File a response to a pro se litigant's paper even if you're not sure how to respond. Your response might simply be to tell the court that you're uncertain of how to construe the filing, or that you don't believe the filing requires a response, but nevertheless you oppose the relief sought. No response may confuse the pro se litigant into believing she prevailed because no response was filed. Also, without a response the motion may fall through the cracks if the court is waiting on a response before taking up the matter."

"Request a status conference with the court whenever things seem to be going south. These conferences afford the court an opportunity to explain things to the pro se litigant and reset and reiterate expectations, obligations, and requirements. A pro se litigant's pleadings should be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. Hall v. Bellmon, 935 F.2d 1106, 4."

"Don't shy away from trying to settle these cases with the assistance of a third- party. Pro se litigants may start with highly unrealistic expectations of what a victory or settlement should look like. A third-party can reset those expectations with a dose of reality that aids in settling the case."

"Don't construe the several chances a court might afford a pro se litigant as the court favoring that party or advocating for them. With the significant challenges pro se litigants face, some judges may make decisions to ensure that these litigants get a fair opportunity to present their case so that justice might be done. But all judges have their limits in affording such leeway."

"Colorado Rules of Professional Conduct Implicated In Pro Se Litigation"

"In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."

"DEALING WITH UNREPRESENTED PERSON Effective: December 1, 2019 In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."

"Rules of Prof. Cond., Rule 4.4 RULE 4.4. RESPECT FOR RIGHTS of THIRD PERSONS Effective: December 1, 2019 In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

"Rules of Prof.Cond., Preamble PREAMBLE: A LAWYER'S RESPONSIBILITIE A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. With limited exceptions, the Colorado Rules of Professional Conduct have been adopted as standards of professional responsibility for the U.S. District Court and the U.S. Bankruptcy Court for the District of Colorado. See D.C.COLO.LAttyR 2."

"As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest."

"A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done. . . Zealousness does not, under any circumstances, justify conduct that is unprofessional, discourteous, or uncivil toward any person involved in the legal system. This is a curious statement because it suggests that caution is warranted to ensure justice is being done when an opposing party is not represented by counsel."
"Rule 8.2. Judicial and Legal officials Colorado Court Rules Colorado Rules of Professional Conduct Maintaining the Integrity of the Profession As amended through Rule Change 2018(6), effective April 12, 2018"

"A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer or of a candidate for election, or appointment to, or retention in, judicial or legal office."

"A lawyer who is a candidate for retention in judicial office shall comply with the applicable provisions of the Code of Judicial Conduct. History. Entire Appendix repealed and readopted April 12, 2007, effective January 1, 2008."

"Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice."

"When a lawyer seeks judicial office, the lawyer should be bound by applicable limitations on political activity."

"To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized."

**Plaintiff has experienced 20 years of corruption and lawlessness when dealing with American lawyers, attorneys, and legal "professionals". Plaintiff will prosecute and endlessly litigate the smallest infractions of the above rules for lawyer conduct, without delay, without fail. A Class Action will be filed for all victims of bad lawyers, PRN.**

## JURDICIAL CONDUCT EXPECTATIONS

32. The Plaintiff is asking this Court and has expectations of this Court to specifically follow the below

"Code of Conduct for United States Judges as specifically outlined in 5 Canons in the United States

Judiciary Policy Code of Conduct for United States Judges" as defined in part herein below:

   e. "Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary"
   f. "Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities"
   g. "Canon 3: A Judge Should Perform the Duties of the office Fairly, Impartially and Diligently."
   h. "Canon 4: A Judge May Engage in Extrajudicial Activities That Are Consistent With the Obligations of Judicial office"

i.  "Canon 5: A Judge Should Refrain From Political Activity"

33. "The Code of Conduct for United States Judges was initially adopted by the Judicial Conference on April 5, 1973, and was known as the "Code of Judicial Conduct for United States Judges." See: JCUS-APR 73, pp. 9-11 forward questions concerning this Code and its applicability should be directed to the Chair of the Committee on Codes of Conduct by as follows: Chair, Committee on Codes of Conduct c/o General Counsel Administrative office of the United States Courts Thurgood Marshall Federal Judiciary Building One Columbus Circle, N.E. Washington, D.C. 20544 202-502-1100 Procedural questions may be addressed to: office of the General Counsel Administrative office of the United States Courts Thurgood Marshall Federal Judiciary Building One Columbus Circle, N.E. Washington, D.C. 20544 202-502-1100"

   a.  **"Canon 1**: A Judge Should Uphold the Integrity and Independence of the Judiciary An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. According to the Guide to Judiciary Policy, Vol. 2A, Ch. 2 Page 3 Deference to the judgments and rulings of courts depends on public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn on their acting without fear or favor. Although judges should be independent, they must comply with the law and should comply with this Code. Adherence to this responsibility helps to maintain public confidence in the impartiality of the judiciary. Conversely, violation of this Code diminishes public confidence in the judiciary and injures our system of government under law." "The Canons are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so it does not impinge on the essential independence of judges in making judicial decisions." "The Code is designed to provide guidance to judges and nominees for judicial office. It may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 351-364). Not every violation of the Code should lead to disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the improper activity, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the restrictions in the Code are necessarily cast in general terms, and judges may reasonably differ in their interpretation. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the Code is not intended to be used for tactical advantage."

   b.  **"Canon 2**: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities Respect for Law. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Outside Influence. A judge should not allow family, social, political, financial, or other

relationships to influence judicial conduct or judgment. A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness. Nondiscriminatory Membership. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin. According to the Guide to Judiciary Policy, Vol. 2A, Ch. 2 Page 4 Canon: An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code. Canon 2B. Testimony as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be perceived as an official testimonial. A judge should discourage a party from requiring the judge to testify as a character witness except in unusual circumstances when the demands of justice require. This Canon does not create a privilege against testifying in response to an official summons. A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others. For example, a judge should not use the judge's judicial position or title to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office. A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate communications to a sentencing judge or a probation or corrections officer but may provide information to such persons in response to a formal request. Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration and by responding to official inquiries concerning a person being considered for a judgeship. Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private

organization whose membership limitations could not be constitutionally prohibited."

c. **"Canon 3**: A Judge Should Perform the Duties of the office Fairly, Impartially and Diligently The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:" "Adjudicative Responsibilities.: A judge should be faithful to, and maintain professional competence in, the law and should not be swayed by partisan interests, public clamor, or fear of criticism." "A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings. (3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity. A judge should require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process. (4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." "A judge may: initiate, permit, or consider ex parte communications as authorized by law; when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters. A judge should dispose promptly of the business of the court. A judge should not make public comment on the merits of a matter pending or impending in any court. A judge should require similar restraint by court personnel subject to the judge's direction and control. The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education." "Administrative Responsibilities" "A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court personnel. A judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge." "A judge should exercise the power of appointment fairly and only on the basis of merit,

avoiding unnecessary appointments, nepotism, and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered. "A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff. A judge should not engage in any form of harassment of court personnel. A judge should not retaliate against those who report misconduct. A judge should hold court personnel under the judge's direction to similar standards. "A judge with supervisory authority over other judges should take reasonable measures to ensure that they perform their duties timely and effectively. "A judge should take appropriate action upon receipt of reliable information indicating the likelihood that a judge's conduct contravened this Code, that a judicial employee's conduct contravened the Code of Conduct for Judicial Employees, or that a lawyer violated applicable rules of professional conduct. "Disqualification. A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which: "The judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. "The judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or lawyer has been a material witness the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding, the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is: a party to the proceeding, or an officer, director, or trustee of a party; acting as a lawyer in the proceeding; known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or to the judge's knowledge likely to be a material witness in the proceeding; the judge has served in governmental employment and in that capacity participated as a judge (in a previous judicial position), counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy." "A judge should keep informed about the judge's personal and fiduciary financial interests and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household. "A judge should neither engage in, nor tolerate, workplace conduct that is reasonably interpreted as harassment, abusive behavior, or retaliation for reporting such conduct. The duty to refrain from retaliation includes retaliation against former as well as current judiciary personnel. Under this Canon, harassment encompasses a range of conduct having no legitimate role in the workplace, including harassment that constitutes discrimination on impermissible grounds and other abusive, oppressive, or inappropriate conduct directed at judicial employees or others. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(2) (providing that "cognizable misconduct includes: (A) engaging in unwanted, offensive, or abusive sexual conduct, including sexual harassment or assault; (B) treating litigants, attorneys, judicial employees, or others in a demonstrably egregious

and hostile manner; or (C) creating a hostile work environment for judicial employees") and Rule 4(a)(3) (providing that "cognizable misconduct includes intentional discrimination on the basis of race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age, or disability"). "Public confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct. Appropriate action depends on the circumstances, but the overarching goal of such action should be to prevent harm to those affected by the misconduct and to prevent recurrence. A judge, in deciding what action is appropriate, may take into account any request for confidentiality made by a person complaining of or reporting misconduct. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(6) (providing that "cognizable misconduct includes failing to call to the attention of the relevant chief district judge or chief circuit judge any reliable information reasonably likely to constitute judicial misconduct or disability. A judge who receives such reliable information shall respect a request for confidentiality but shall nonetheless disclose the information to the chief district judge or chief circuit judge, who shall also treat the information as confidential. Certain reliable information may be protected from disclosure by statute or rule. A judge's assurance of confidentiality must yield when there is reliable information of misconduct or disability that threatens the safety or security of any person or that is serious or egregious such that it threatens the integrity.

d. **"Canon 4**: A Judge May Engage in Extrajudicial Activities That Are Consistent With the Obligations of Judicial office. A judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, lead to frequent disqualification, or violate the limitations set forth in Canon 4.

e. **"Canon 5**: A Judge Should Refrain From Political Activity General Prohibitions. A judge should not: (1) act as a leader or hold any office in a political organization; (2) make speeches for a political organization or candidate, or publicly endorse or oppose a candidate for public office; or (3) solicit funds for, pay an assessment to, or make a contribution to a political organization or candidate, or attend or purchase a ticket for a dinner or other event sponsored by a political organization or candidate. B. Resignation upon Candidacy. A judge should resign the judicial office if the judge becomes a candidate in a primary or general election for any office. C. Other Political Activity. A judge should not engage in any other political activity."

f. **Plaintiff has experienced 20 years of corruption and lawlessness when dealing with politicians, judges, and legal "professionals". Plaintiff will**

prosecute and endlessly litigate the smallest infractions of the above rules for Judicial conduct, without delay, without fail.

## BACKGROUND

34. As a Professional Brand Development Contractor and Founder of Brand Development Partners, LLC., Plaintiff J. Alan Konecny travels the world overhauling brands, creating brands and commercializing new specialty food and Plaintiff worked Nationally and Internationally for Defendants to Civil Case No. 23-CV-02753 Tripper, Inc and Defendant Origine California, Inc. a

    a. Head of North American Brand Commercialization, Operations and Sales with multi-state employee management,

    b. Origine Brand Commercialization Manager

    c. Tripper Account Manager "AM", and was employed with the Company as a Contractor since July 2022 per the National Manager Agreement

35. The crimes and torts outlined herein crosses state lines, involves multiple states, and interfered with trade between states and must be charged as a federal offense as required by Law.

36. Plaintiff was hired by Defendant Tripper Origine to replace the non-functioning US sales team due to their refusal to work, return-to-work, and constant gaslighting, harassment and bullying within the California employee ranks and was harmed in the process as outlined in Civil Case No. 23-CV-02753

37. Plaintiff was hired to and did commercialize the failed retail brand, "Origine", after 5 years of unsuccessful launch attempts by Defendants.  Plaintiff created a new line of naturally flavored vanilla powders for the Defendant Origine Inc. which can be seen @ www.branddevelopmentpartners.com and was harmed related to Civil Case No. 23-CV-02753

38. Additionally, Plaintiff was tasked with finding a new warehouse and office complex in Colorado for the express purpose of moving the non-functioning California office and jobs to Colorado while

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

terminating the offending employees and hiring a new Colorado based team and was harmed related to Civil Case No. 23-CV-02753

39. Plaintiff consistently worked from 7am to 9pm, 7 days a week, managing every aspect of ownerships' new direction for brands "Tripper" and "Origine" and was harmed related to Civil Case No. 23-CV-02753

40. The outlined torts herein refer to a breach of an individual's civil rights, where Defendant's negligence directly caused harm to Plaintiff and Plaintiff's property.

41. Various types of torts were committed against Plaintiff by Defendants, but all torts lead to personal injury and real business and personal damage and Plaintiff was harmed related to Civil Case No. 23-CV-02753

42. Negligence stands as one of the causes of these torts

43. Plaintiff is an Injured party and files this lawsuit against the Defendant tortfeasor to seek compensation for damages caused by the tortfeasor Defendant's intentionally negligent behaviors.

44. The outlined Intentional torts herein are torts and crimes since Defendant's behavior aligns with criminal conduct.

45. This Harassment is a form of insurance discrimination and violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

46. These Defendants are liable pursuant to ¬ß federal venue statute, 28 U.S. Code ¬ß 1391 and 28 U.S. Code ¬ß 1369 - Multiparty, multi-forum jurisdiction.

47. Plaintiff has offered many solutions to resolve this dispute. All offers require payment of contractual retainer and expenses agreed to by the Defendants during contract negotiations and in the agreed contract as outlined and quoted herein.

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

48. Harassment is a form of insurance discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

49. Defendant(s) made false and misleading statements about Plaintiff causing business and financial disruption for both Plaintiff and Plaintiff's business Brand Development Partners and Plaintiff was harmed related to Civil Case No. 23-CV-02753

50. Plaintiff was ridiculed and harassed by Defendant(s), harassment which intended to cause and did cause real harm to the Plaintiff.

51. Bad Faith Claim:

   1. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

   2. Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

   3. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

   4. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

   5. The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

## TITLE VI of THE CIVIL RIGHTS ACT VIOLATIONS

52. Plaintiff was ridiculed and harassed by Defendant(s) at work in California and Colorado and at trade shows in California and Nevada.

53. Defendants failed to train their new employees Federal Discrimination Laws and Defendant's failed to train employees / representatives responsible communication standards for Disabled Veterans. Employees and representatives harassed and blamed Plaintiff for the changes orchestrated by Tripper Origine ownership.

54. Defendants discriminated against and openly harassed Plaintiff in direct violation of Title VI of The Civil Rights Act of 1964. Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

55. Harassment is a form of insurance discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).


## INTERSTATE THEFT of LABOR & THEFT of SERVICES

56. Theft of Labor is the unauthorized use or consumption of a Labor without paying for it. This act is considered a criminal offense and is a punishable offense. Theft of Labor is classified as a form of theft or larceny. The elements required to establish the offense generally include:

   1. Intent: The Defendants intentionally obtained or used a Plaintiff's Labor without the intention of paying for it.

   2. Service: The Plaintiff's Labor is always provided in exchange for payment i.e., professional labor for retainer payment - Plaintiff was paid correctly for 9 months.

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

**57.** Theft of Services is the unauthorized use or consumption of a service without paying for it or obtaining proper permission. This act is considered a criminal offense and is a punishable offense. Theft of services is classified as a form of theft or larceny. The elements required to establish the offense generally include:

   1.  Intent: The Defendants intentionally obtained or used a service without the intention of paying for it.

## TORTIOUS INTERFERENCE of A CONTRACT VIOLATIONS

58. The acts perpetrated against Plaintiff constitute Tortious Interference of a Contract with malicious intent to cause finance harm.

## THEFT of LABOR VIOLATIONS

**59.** Theft of Labor is the unauthorized use or consumption of a Labor without paying for it. This act is considered a criminal offense and is a punishable offense.

## THEFT of SERVICE VIOLATIONS

**60.** Theft of Services is the unauthorized use or consumption of a service without paying for it or obtaining proper permission. This act is considered a criminal offense and is a punishable offense. Theft of services is classified as a form of theft or larceny. The elements required to establish the offense generally include:

   2.  Intent: The Defendants intentionally obtained or used a service without the intention of paying for it as clearly outlined herein.

   3.  Service: The Plaintiff's service is always provided in exchange for payment i.e., professional services for retainer payment, Plaintiff's contract was paid correctly for 9 months, as written, and

agreed, payments stopped when Plaintiff refused to endure further criminal harassment from and by Defendants.


## AMERICANS WITH DISABILITIES ACT VIOLATIONS

61. The Americans with Disabilities Act (ADA) is a federal civil rights law that prohibits discrimination against people with disabilities.  The ADA requires that entities provide full and equal access for people with disabilities.  This can be done through: "Reasonable Modifications of Policies, Practices, and Procedures. Adjusting policies, practices, and procedures, if needed, to provide goods, services, facilities, privileges, advantages, or accommodations.  Effective Communication.  Making communication, in all forms, easily understood. Accessible Facilities.

62. Defendants are responsible under Title II of the ADA for the problems created for the Plaintiff.  A person with a disability can be a person with a mobility or physical disability, sensory (vision or hearing), intellectual, psychiatric, or other mental disability.

63. Plaintiff is a Disabled Veteran protected by the Americans with Disabilities Act protections and demands restitution for the abuse(s) and violations of the Americans with Disabilities Act by Defendants.

64. Defendants Failed to make Reasonable Modifications of Policies, Practices, and Procedures and failed to train employees, staff, contractors, regarding the Americans with Disabilities Act application and personal legal responsibility.

65. In 1990, finding that discrimination against individuals with disabilities persists, Congress passed the Americans Disabilities Act (ADA). Congress included the remedies provided in Title VII of the Civil Rights Act of 1964 (1964 CRA) to enforce the ADA.

## INTENTIONAL INFLICTION of EMOTIONAL & FINANCIAL DISTRESS

66. The acts perpetrated against Plaintiff constitute Intentional Infliction of Emotional & Financial Distress with intent to cause finance harm and did financial harm. Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA) and Moral turpitude (Moral turpitude means conduct that is wrong in itself even if no statute were to prohibit the conduct)

67. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

68. Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

69. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

70. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

71. The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.


## TORTIOUS INTERFERENCE of A CONTRACT & BREACH of CONTRACT

**72.** The acts perpetrated against Plaintiff constitute Tortious Interference of a Contract and Breach of Contract with intent to cause finance harm and did cause harm.

**73.** Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

**74.** Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

**75.** The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

**76.** The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

**77.** The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

### INTERSTATE HARASSMENT IN THE WORKPLACE

**78.** The acts perpetrated against Plaintiff constitute INTERSTATE HARASSMENT IN THE WORKPLACE with intent to cause real harm and did cause real harm and Moral turpitude (Moral turpitude means conduct that is wrong in itself even if no statute were to prohibit the conduct)

**79.** Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

**80.** Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

**81.** The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

**82.** The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

**83.** The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

### VIOLATION of 18 U.S. CODE § 2422 INTERSTATE COERCION AND ENTICEMENT

**84.** The acts perpetrated against Plaintiff constitute Interstate Coercion And Enticement with intent to cause and did cause real harm and Moral turpitude (Moral turpitude means conduct that is wrong in itself even if no statute were to prohibit the conduct)

### FIRST CLAIM FOR RELIEF

### FOR VIOLATION of TITLE VI of THE CIVIL RIGHTS ACT of 1964

85. Plaintiff requires the remedies provided in Title VII of the Civil Rights Act of 1964 (1964 CRA) to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**86.** Plaintiff incorporates by reference ¶¶ **1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

87. Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

88. Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

89. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

90. By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

91. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

92. Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

93. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

94. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

95. The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

96. Plaintiff prays for relief from the schemes and harassment outlined.

97. Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

98. Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

99. Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

100.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

101.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

102.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

103.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

104.  Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

105.  Plaintiff prays for general relief and safety.


## SECOND CLAIM FOR RELIEF

## FOR INTERNATIONAL THEFT of LABOR & THEFT of SERVICES

106.  Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**107.**  Plaintiff incorporates by reference **¶¶ 1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

108.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

109.  Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

110.  Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

111.  By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

112.  Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

113.  Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

114.  The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

115.  The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

116.  The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

117.  Plaintiff prays for relief from the schemes and harassment outlined.

118.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

119.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

120.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

121.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

122.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

123.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

124.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

125.  Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

126.  Plaintiff prays for general relief and safety.

## THIRD CLAIM FOR RELIEF

## FOR VIOLATION of THE AMERICANS WITH DISABILITIES ACT of 1990

127.  Plaintiff requires the remedies provided in Americans with Disabilities Act to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**128.**  Plaintiff incorporates by reference ¶¶ **1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

129.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

130.  Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

131.  Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

132.  By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

133.  Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

134.  Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

135.  The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

136.  The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

137.  The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

138.  Plaintiff prays for relief from the schemes and harassment outlined.

139.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

140.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

141.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

142.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

143.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

144. Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

145. Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

146. Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

147. Plaintiff prays for general relief and safety.


### FOURTH CLAIM FOR RELIEF

### FOR INTENTIONAL INFLICTION of EMOTIONAL DISTRESS

148. Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**149.** Plaintiff incorporates by reference ¶¶ **1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

150. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

151. Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

152. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

153. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

154.  The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

155.  Plaintiff prays for relief from the schemes and harassment outlined.

156.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

157.  Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

158.  Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

159.  By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

160.  Plaintiff prays for relief from the schemes and harassment outlined.

161.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

162.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

163.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

164.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

165.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

166.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

167.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

168.  Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

169.  Plaintiff prays for general relief and safety.

### FIFTH CLAIM FOR RELIEF

### FOR TORTIOUS INTERFERENCE of A CONTRACT & BREACH of CONTRACT

170.  Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**171.  Plaintiff incorporates by reference ¶¶ 1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

172.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

173.  Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

174.  Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

175.  The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

176.  The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

177.  The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

178.  Plaintiff prays for relief from the schemes and harassment outlined.

179.  Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

180.  Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

181.  By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

182.  Plaintiff prays for relief from the schemes and harassment outlined.

183.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

184.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

185.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

186.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

187.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

188.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

189.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

190. Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

191. Plaintiff prays for general relief and safety.


## SIXTH CLAIM FOR RELIEF

## FOR INTERSTATE HARASSMENT IN THE WORKPLACE

192. Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**193.** Plaintiff incorporates by reference ¶¶ **1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

194. Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

195. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

196. Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

197. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

198. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

199. The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

200. Plaintiff prays for relief from the schemes and harassment outlined.

201. Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

202. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

203. By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

204. Plaintiff prays for relief from the schemes and harassment outlined.

205. Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

206. Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

207. Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

208. Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages.

Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

209.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

210.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

211.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

212.  Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

213.  Plaintiff prays for general relief and safety.


## SEVENTH CLAIM FOR RELIEF

## FOR VIOLATION of 18 U.S. CODE § 2422 INTERSTATE COERCION AND ENTICEMENT

214.  Plaintiff requires the remedies provided in Federal Law to compensate for the crimes and harassment perpetrated by the Defendants, outlined within.

**215.  Plaintiff incorporates by reference ¶¶ 1-84 and Civil Case No. 23-CV-02753 in the United States District Court For The District of Colorado**

216.  Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements, which were misleading in that they contained misrepresentations and failed to

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

217. Defendants failed to approve or deny Plaintiff's claim in a reasonable amount of time once all proof of the claim was submitted (i.e., a "stall tactic");

218. Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

219. The Defendant insurer deliberately avoided investigating the facts of Plaintiff's claim to avoid paying it.

220. The Defendant insurer cherry-picked only the facts that supported a denial and ignored all the evidence supporting the Plaintiff's claim.

221. The Defendants learned that they made a mistake and covered it up instead of admitting it and fixing it.

222. Plaintiff prays for relief from the schemes and harassment outlined.

223. Defendants Employed devices, schemes, and artifices to defraud. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff in connection Plaintiff's work and development activity and other activity throughout the period.

224. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendants and their companies, websites, employees, representatives, contractors, and affiliates.

225. By reason of such wrongful conduct, the Individual Defendants and Tripper Origine are liable pursuant to Federal Law as cited herein and as direct and proximate result of these defendants'

wrongful conduct, Plaintiff suffered damages in connection with the improper behavior of Defendants.

226.  Plaintiff prays for relief from the schemes and harassment outlined.

227.  Plaintiff requests swift relief as required by Federal Law and Plaintiff requests DECLARATORY AND INJUNCTIVE RELIEF.

228.  Imposition of enforcement and sanctions are just and proper, Plaintiff requests that all Exhibits be reviewed In Camera, Plaintiff incorporates by reference all attached.

229.  Plaintiff prays for such other relief to which Plaintiff may be justly entitled such as Damages which include pain, suffering, anguish, intentionally inflicted harm.

230.  Exemplary Damages: The conduct committed by Defendants against Plaintiff is the type of conduct evidencing actual malice on Defendants part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

231.  Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition as well as DECLARATORY AND INJUNCTIVE RELIEF.

232.  Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

233.  Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

234.  Plaintiff prays for fees, expenses, costs, loss of income and all legal fees at a rate of $250 per hour billed full hour only.

235.  Plaintiff prays for general relief and safety.

## PETITION (PRAYER)

236.  WHEREFORE, Plaintiff prays for judgement as follows: declaring this action to be proper action, awarding damages, including interest; and such relief as the Court may deem proper.

237.  Defendant prays for acknowledgment that Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured ownership i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court, which has caused Plaintiff to file this Civil Action and seeks all relief lawfully due Plaintiff.

238.  Plaintiff prays that the citation and notice issued as required by law and by Federal Marshall using form USM-285 and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this Petition.

239.  Plaintiff prays that, on final hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

240.  Plaintiff prays for judgment against all Defendant(s)s in the sum exceeding $1,000,000 and the minimum jurisdictional limits of this court for Plaintiff's actual damages as alleged, for exemplary damages, for loss of income $450,000, and for loss of related assets $5,000,000, and for costs of court, and for general relief and relief the Court may deem proper.

241.  Plaintiff prays for litigation preparation fees of $250 per hour, interest, expenses, and costs as requested of $275,000.

242.  The Court is requested to make all other and further orders that are pleaded for or that are deemed necessary for the complete safety and financial stability of the Plaintiff.

243.  Plaintiff seeks relief, relief from continued and experienced crimes and torts, premeditated and aggressively perpetrated to include but not limited to:

    j.  Violation(s) of 42 U.S. Code Americans With Disabilities Act of 1990

k.  Violation(s) of Title VI of The Civil Rights Act of 1964

244.  Defendants forced this Plaintiff claimant into litigation [Civil Case No. 23-CV-02753] by failing to make a settlement offer as requested by the Insured i.e. Tripper, Inc. the insured Defendant to Civil Case No. 23-CV-02753 in this Court.

245.  Plaintiff prays for relief from the schemes and harassment outlined.

## JURY DEMAND

246.  **Plaintiff demands a trial by jury.** The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654 and The Seventh Amendment to the U.S. Constitution ensures that citizens' civil cases can be heard and decided upon by a jury. The jury trial provides a forum for all the facts to be presented, evaluated impartially, and judged according to the law.

DATED: November 2, 2023
Respectfully Submitted,

J. Alan Konecny
125 W. Virginia Ave, # 265
Gunnison, CO. 81230
Tel: 970-452-9378
alan@branddevelopmentpartners.com

By:  /S/ J. Alan Konecny
J. Alan Konecny
Plaintiff
Pro Se

## CIVIL CASE Cc LIST

247. United States Federal Trade Commission
248. United States Department of Commerce
249. United States Federal Court, Denver Colorado
250. United States Department of Justice
251. SolveForY.org Public Benefit Corporation
252. JackassParrot.com
253. NunsAndClowns.com
254. Liberty Mutual Insurance Jenell Garrison Sr Claims Resolution Specialist II
     Global Retail Markets U.S. Casualty Claims
     Underwriting Company: Ohio Security Insurance Company
     Liberty Mutual Insurance PO Box 5014 Scranton, PA 18505-5014 office: 720-873-9642 Toll Free:
     Business Lines: 844-325-2467 Fax: (888) 268-8840
255. Office of the Attorney General Colorado Department of Law Ralph L. Carr Judicial Building 1300
     Broadway, 10th Floor Denver, CO 80203 (720) 508-6000

Plaintiff's ORIGINAL Complaint Filed 11-2-23 related to Case #23-02753

### CERTIFICATE of SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Rules of Civil Procedure by a <u>FEDERAL MARSHAL</u> on or about November 2, 2023, and by electronic service via Defendant's email server / email address as outlined herein.

This court has been requested to and is responsible for serving all plaintiff litigation to defendants by federal marshal to be compliant with THE AMERICANS WITH DISABILITIES ACT "ADA" and THE UNITED STATES FEDERAL RULES of CIVIL PROCEDURE and the right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654.

According to https://www.usmarshals.gov/what-we-do/service-of-process "Service of Process"

"For the service of any process, the form "USMS-285" is utilized by the U.S. Marshals Service and Federal Court. One complete set of this form (USM-285) and one copy of each writ for each individual, company, corporation, etc., to be served or property to be seized or condemned must be submitted."

Plaintiff has submitted form USM-285 for each Defendant.

"PLAINTIFF'S MOTION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS AND TO PROCEED IN FORMA PAUPERIS" has been filed with this Court.

**The acts giving rise to this complaint have left Plaintiff unable to pay Service of Process Fees or Court Costs.**

<u>/S/ J. Alan Konecny</u>

J. Alan Konecny

Plaintiff

Pro Se